IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE



2015 MAR 17  A 11: 45

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 3:15-CR-__56__ |
| | ) |
| ▮▮▮▮▮▮▮▮▮▮▮▮ | ) Judges _Varlan_ / _Shirley_ |
| | ) |
| | ) |
| AMADO VALDEZ-MORALES | ) |
| MAYRA EDITH BLAIR | ) |
| AURORA CARVAJAL | ) |
| LUIS CARVAJAL | ) |
| BERTHA DEL PILAR VARGAS | ) |
| MARTIN AYALA | ) |

## INDICTMENT

The Grand Jury charges as follows:

## INTRODUCTION

At all times relevant to this indictment:

### _Individuals and Businesses_

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a

citizen of Guatemala.

2.     Amado Valdez-Morales ("VALDEZ") is a citizen of Honduras, who was deported from the United States on about July 16, 2012, and was subsequently found at or near Oak Ridge, Tennessee, within the Eastern District of Tennessee, having not obtained the express consent of the Secretary of Homeland Security to reapply for admission to the United States.

3.     Mayra Edith Blair ("BLAIR") is a naturalized citizen of the United States and is the owner and operator of MAYRA MORENO INSURANCE, INC., a business that was organized under the laws of the State of Tennessee and that operates from three locations within the Eastern District of Tennessee.

4.     Aurora Carvajal ("A. CARVAJAL") is a naturalized citizen of the United States and is an owner and operator of SERVICIOS LATINOS, a limited liability partnership registered under the law of the State of Tennessee and that operates within the Eastern District of Tennessee.

5.     Luis Carvajal ("L. CARVAJAL") is the husband of A. Carvajal and is employed at SERVICIOS LATINOS.

6.     Bertha Del Pilar Vargas ("VARGAS") is a permanent United States resident who is married to Martin Ayala.

7.     Martin Ayala ("AYALA") is a naturalized United States citizen who is married to VARGAS.

8.     LA RANCHERA, is a check cashing business in Oak Ridge, Tennessee, within the Eastern District of Tennessee.   It is operated by VARGAS and AYALA.

9.     MARTINO'S PIZZA AND MORE is a store and restaurant in Crossville, Tennessee, within the Middle District of Tennessee.   It is operated by VARGAS and AYALA.

### *Background*

10.     The Internal Revenue Code assesses a tax upon income earned in the United States, regardless of whether earned by citizens or non-citizens, and establishes the requirements for the filing of federal income tax returns.

11.     Individuals submitting federal income tax returns are required by law to provide an appropriate identification number.   United States citizens use their Social Security number for that purpose.   Those who are residing in the United States illegally, however, are generally not permitted to obtain Social Security numbers.   In 1996, the Internal Revenue Service began issuing Individual Taxpayer Identification Numbers, or "ITINs."   By obtaining an ITIN, an individual who is already disregarding federal law

by living in the United States illegally is given the opportunity to comply with federal law by filing tax returns.

12.     In order to be eligible for an ITIN, the applicant must not have a Social Security number and must be unable to get one. IRS Form W-7, which is submitted for the purpose of obtaining an ITIN, states that it is "[f]or use by individuals who are not U.S. citizens or permanent residents." The applicant must also establish his or her identity and status as a foreign national with appropriate documentation, such as a foreign birth certificate or national identification card. If the applicant can furnish sufficient proof that he or she is living in the United States illegally, the IRS will issue that person an ITIN.

13.     Although an ITIN does not make a tax return filer eligible for an Earned Income Tax Credit, an ITIN can be submitted with a federal income tax return that requests the refund of an Additional Child Tax Credit. IRS Schedule 8812, which accompanies an IRS Form 1040 or 1040A, is provided for the purpose of permitting the requests of such "refundable" credits by persons who are not U.S. citizens or legal permanent residents.

## *The Scheme*

14.    In or around 2012, VALDEZ, █████████ and their co-conspirators embarked upon a scheme through which they sought to steal as much money as possible from the United States Treasury and the U.S. taxpayers through exploiting the ITIN system.

15.    The first part of the scheme involved obtaining ITINs for use in filing fraudulent tax returns.    VALDEZ and █████████ conspired with other persons known and unknown to the Grand Jury for the task of preparing false IRS Forms W-7 and obtaining fraudulent ITINs, frequently using the names of persons who did not even exist.   In support of the illicit W-7 forms, VALDEZ and █████████ obtained forged Mexican, Honduran and Guatemalan identification documents from unnamed co-conspirators.

16.    The second part of the scheme involved the preparation of bogus tax returns with the fraudulently-obtained ITINs.   VALDEZ, █████████ and other unnamed co-conspirators provided lists of names, ITINs and additional information to BLAIR, BLAIR's employees and other unnamed individuals, who prepared false and fraudulent income tax returns for submission to the Internal Revenue Service.   Along

with the names to be used on the fraudulent tax returns, VALDEZ, ███████ and other unnamed co-conspirators provided the addresses to which the Internal Revenue Service was to mail the Treasury checks. A collection of similar addresses were provided for the returns, thereby ensuring that VALDEZ, ███████ and other unnamed co-conspirators could get the refund checks. BLAIR and her employees, acting at Blair's direction, placed addresses on the returns as instructed by VALDEZ, ███████ and other unnamed co-conspirators.

17. The false returns prepared at MAYRA MORENO INSURANCE would typically be prepared as a set of returns covering the three preceding tax years, and would request the refund of Additional Child Tax Credits. BLAIR and her employees were provided lists of names and multiple ITINs for dependents, which were listed as nieces and nephews on the tax returns. In recognition of the illicit nature of such returns, MAYRA MORENO INSURANCE charged more for their preparation than would otherwise have been charged for a legitimate tax return. Because BLAIR was not registered with the IRS as a tax preparer, she simply forged or used without permission the name of a registered preparer.

18.    The bogus returns were then filed, some electronically and some by U.S. Mail, with the Internal Revenue Service, which subsequently issued Treasury checks and mailed them to the addresses that BLAIR and her employees had been directed to put on the returns by VALDEZ, ███████ and their co-conspirators.

19.    The third part of the scheme involved converting the illicit tax refund checks into cash.    Upon delivery of the Treasury checks, VALDEZ, ███████ and their co-conspirators would pick them up and take them to one of several locations to have them cashed.    If phony identification cards had not already been obtained for the purpose of getting the ITINs initially, VALDEZ would now have identification cards produced that would match the fraudulent refund checks.    The identification cards, prepared by an unnamed conspirator, would be poorly designed and obviously fake, and would generally purport to be from locations outside the United States, such as Mexico, Guatemala and Honduras.

20.    VALDEZ, ███████ and their co-conspirators would take the fraudulent Treasury checks to one of a number of businesses that catered to the local Hispanic community and that were known to provide services to illegal immigrants.

21. At Servicios Latinos, A. Carvajal would cash, or direct an employee to cash, Treasury checks for Valdez in any amount. In recognition of the risks associated with cashing illegally-obtained checks, A. Carvajal would charge a 14% commission for each check.

22. At La Ranchera and Martino's, Ayala and Vargas would cash, or direct employees to cash, Treasury checks brought in by Valdez that they knew to be fraudulent.

23. In addition to going out and cashing checks personally, Valdez would also arrange to have other persons present checks to be cashed. Prior to doing so, he would call to let A. Carvajal and Vargas know who would be coming.

24. Valdez and ███████ would also arrange for individuals to travel from North Carolina to cash fraudulently-obtained Treasury checks with A. Carvajal and Vargas. In return for taking such persons to A. Carvajal and Vargas to cash checks, Valdez would receive a 14% commission for each check, paid by the person receiving the funds.

25.     Between January 2012 and November 2014, more than 2,400 U.S.
Treasury checks were cashed at LA RANCHERA, SERVICIOS LATINOS, and at MARTINO'S,
with such checks having an approximate aggregate value of $10,800,000.

26.     VALDEZ and ████████ also conspired with other, unnamed
conspirators for the purpose of obtaining false Forms W-2, which BLAIR, her
employees, and unnamed persons would use in preparing, submitting, and causing to be
submitted, fraudulent federal tax returns.   Upon receipt of the Treasury checks,
VALDEZ and ████████ would take the checks to A. CARVAJAL, L. CARVAJAL,
VARGAS and AYALA, who would cash them.   Because of the large sums of cash
involved, however, A. CARVAJAL would on occasion provide only a portion of the
amount in cash and require that the balance be sent by wire transfer to a recipient
outside the United States.

27.     A. CARVAJAL and L. CARVAJAL also conspired with an unnamed
co-conspirator for the purpose of having that unnamed co-conspirator prepare tax
returns using false Forms W-2.

28.     Upon receiving and cashing what they knew to be fraudulently-obtained
Treasury checks, A. CARVAJAL, L. CARVAJAL, VARGAS and AYALA would deposit such

checks into their respective businesses' bank accounts, from which accounts cash would be withdrawn and used to cash other fraudulent Treasury checks.

## COUNT ONE

## CONSPIRACY TO SUBMIT FALSE CLAIMS

## (18 U.S.C. § 286)

29.     The allegations contained in paragraphs 1 through 28 are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 286.

30.     From in or about 2012 through on or about December 16, 2014, in the Eastern District of Tennessee, and elsewhere, the defendants, ███████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA and BLAIR, did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to submit false claims to the United States, to wit, false and fraudulent federal income tax returns.

31.     It was a part and an object of the conspiracy that the defendants,

█████████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR and others known and unknown to the Grand Jury, obtained and aided in obtaining the payment

and allowance of false, fictitious and fraudulent claims, through the submission of false and fraudulent federal income tax returns.

## MANNER AND MEANS

32.    In furtherance of the conspiracy, and to accomplish the ends thereof, the defendants, ███████████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR and others known and unknown to the Grand Jury, used the following means, among others:

a.  VALDEZ and an unindicted co-conspirator created and caused to be created false and fictitious identification documents for the purpose of obtaining and attempting to obtain Individual Tax Identification Numbers ("ITINs") from the Internal Revenue Service.

b.  VALDEZ and ████████ caused to be prepared and submitted false and fraudulent Internal Revenue Service Forms W-7 for the purpose of obtaining and attempting to obtain ITINs from the Internal Revenue Service.

c.  ████████ VALDEZ, A. CARVAJAL, L. CARVAJAL, BLAIR, individuals working at BLAIR's direction, and other unnamed persons prepared

and caused to be prepared and submitted and caused to be submitted false and fraudulent federal income tax returns to the Internal Revenue Service, thereby claiming and attempting to claim tax refunds, while knowing that such tax refund claims were false and fraudulent.

All in violation of Title 18, United States Code, Section 286.

## COUNT TWO

## CONSPIRACY TO COMMIT MAIL FRAUD

### (18 U.S.C. § 1349)

33.     The allegations contained in paragraphs 1 through 32 are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1349.

34.     From in or about 2012 through on or about December 16, 2014, in the Eastern District of Tennessee, and elsewhere, the defendants, ███████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, and BLAIR, did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, including violations of Title 18, United States Code, Section 1341 (mail fraud).

## OBJECTS OF THE CONSPIRACY

35.    It was a part and object of the conspiracy that the defendants,

████████    VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR, and others

known and unknown to the Grand Jury, having devised schemes and artifices for the

purpose of defrauding and obtaining money and property from the United States by

means of false and fraudulent pretenses and representations, would and did cause things

to be deposited with and delivered by the U.S. Postal Service for the purpose of

executing said schemes and artifices, in violation of Title 18, United States Code,

Section 1341.

## MANNER AND MEANS

36.    In furtherance of the conspiracy, and to accomplish the ends thereof, the

defendants, ████████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA,

BLAIR, and others known and unknown to the Grand Jury, used the following means,

among others:

    a.    ████████ and VALDEZ delivered and caused to be delivered to the

        Internal Revenue Service, by means of the U.S. Postal Service, IRS

Forms W-7, which forms ██████████ and VALDEZ knew to contain false and fictitious information.

b. ██████████ and VALDEZ submitted and caused to be submitted IRS Forms W-7, which forms ██████████ and VALDEZ knew to contain false fictitious information, well knowing and expecting at that time that the submission of such IRS Forms W-7 would cause the Internal Revenue Service to deliver, by means of the U.S. Postal Service, correspondence containing ITINs that had been procured through the use of false and fictitious information.

c. ██████████ VALDEZ, BLAIR, A. CARVAJAL, and L. CARVAJAL delivered and caused to be delivered to the Internal Revenue Service, by means of the U.S. Postal Service, federal income tax returns, which forms ██████████ VALDEZ, BLAIR, A. CARVAJAL, and L. CARVAJAL knew to contain false and fraudulent information.

d. ██████████ VALDEZ, BLAIR, A. CARVAJAL, and L. CARVAJAL submitted and caused to be submitted federal income tax returns, which forms ██████████ VALDEZ, BLAIR, A. CARVAJAL, and L.

CARVAJAL knew to contain false and fictitious addresses, well knowing and expecting at that time that the submission of such federal income tax returns would cause the Internal Revenue Service to deliver, by means of the U.S. Postal Service, fraudulently-obtained Treasury checks to the false and fictitious addresses that had been submitted through such federal income tax returns.

e.  Upon receipt of the fraudulently-obtained Treasury checks, VALDEZ, ██████████ A. CARVAJAL and persons known and unknown to the Grand Jury fraudulently endorsed then negotiated and exchanged such checks for cash from, at the direction of, and with the knowledge of A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA and other persons known and unknown to the Grand Jury, all of which persons knew and had reason to know that such Treasury checks represented fraudulently-obtained tax refunds.

All in violation of Title 18, United States Code, Section 1349.

## COUNT THREE

## CONSPIRACY TO COMMIT WIRE FRAUD

## (18 U.S.C. § 1349)

37.    The allegations contained in paragraphs 1 through 36 are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1349.

38.    From in or about 2012 through on or about December 16, 2014, in the Eastern District of Tennessee, and elsewhere, the defendants, ███████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR, and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree with each other to commit offenses against the United States, including violations of Title 18, United States Code, Section 1343 (wire fraud).

## OBJECTS OF THE CONSPIRACY

39.    It was a part and object of the conspiracy that the defendants, ███████ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR and others known and unknown to the Grand Jury, having devised schemes and artifices for the purpose of defrauding and obtaining money and property from the United States by

means of false and fraudulent pretenses and representations, would and did cause to be transmitted by wire communications in interstate commerce any writings, signals, pictures, and sounds for the purposes of executing said schemes and artifices, in violation of Title 18, United States Code, Section 1341.

## MANNER AND MEANS

40.    In furtherance of the conspiracy, and to accomplish the ends thereof, the defendants, ▋▋▋▋ VALDEZ, A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR, and others known and unknown to the Grand Jury, used the following means, among others:

>    a.    ▋▋▋▋ VALDEZ, A. CARVAJAL, L. CARVAJAL, BLAIR, and others known and unknown to the Grand Jury, delivered and caused to be delivered to the Internal Revenue Service, by means of electronic filing via the Internet, a means of communication in and affecting interstate commerce, federal income tax returns, which forms ▋▋▋▋ VALDEZ, A. CARVAJAL, L. CARVAJAL, BLAIR, and others known and unknown to the Grand Jury knew to contain false and fraudulent information.

b. Upon receipt of the fraudulently-obtained Treasury checks, ▮▮▮▮▮▮ VALDEZ, A. CARVAJAL, L. CARVAJAL and persons known and unknown to the Grand Jury fraudulently endorsed then negotiated and exchanged such checks for cash from, at the direction of, and with the knowledge of A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, and other persons known and unknown to the Grand Jury, all of which persons knew and had reason to know that such Treasury checks represented fraudulently-obtained tax refunds.

All in violation of Title 18, United States Code, Section 1349.

## COUNT FOUR

## CONSPIRACY TO COMMIT MONEY LAUNDERING

### (18 U.S.C. § 1956(h))

41. The allegations contained in paragraphs 1 through 40 are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1956(h).

42. From in or about 2012 through on or about December 16, 2014, in the Eastern District of Tennessee, and elsewhere, the defendants, ▮▮▮▮▮▮ VALDEZ,

A. CARVAJAL, L. CARVAJAL, VARGAS, AYALA, BLAIR, and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, to wit;

    a. to conduct and attempt to conduct financial transactions with the intent to promote the carrying on of specified unlawful activity, that is: (1) the submission of false claims in violation of 18 U.S.C. § 286; (2) the theft of public money in violation of 18 U.S.C. § 641; (3) mail fraud in violation of 18 U.S.C. § 1341; and (4) wire fraud in violation of 18 U.S.C. § 1343, knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

    b. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is: (1) the submission of false claims in violation of 18 U.S.C. § 286; (2) the theft of public money in violation of 18 U.S.C. § 641; (3) mail fraud in violation of 18

U.S.C. § 1341; and (4) wire fraud in violation of 18 U.S.C. § 1343,

knowing that the transactions were designed in whole and in part to

conceal and disguise the nature, location, source, ownership, and

control of the proceeds of specified unlawful activity, and that while

conducting and attempting to conduct such financial transactions,

knew that the property involved in the financial transactions

represented the proceeds of some form of unlawful activity, in

violation of 18 U.S.C. § 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FIVE

## ILLEGAL REENTRY BY A PREVIOUSLY DEPORTED ALIEN

## (8 U.S.C. § 1326)

43.     On or about the 16th day of December, 2014, at Oak Ridge, Tennessee, in
the Eastern District of Tennessee, the defendant, Valdez, an alien, was found in the
United States after having been deported therefrom on or about July 16, 2012, at or near
Harlingen, Texas, and not having obtained the express consent of the Secretary of
Homeland Security to reapply for admission to the United States.

In violation of Title 8, United States Code, Section 1326(a).

# FORFEITURE ALLEGATIONS

1.     The allegations contained in Counts One through Four of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 28 U.S.C. § 2461.

2.     Pursuant to 18 U.S.C. § 981(a)(1)(C), upon conviction of any offense in violation of 18 U.S.C. §§ 1349, any defendant so convicted shall forfeit to the United States any property, real or personal, constituting or traceable to the proceeds of any violation of 18 U.S.C. § 1349, including but not limited to the following property:

(a)     Real property located at 3360 Davis Ferry Road, Loudon, Tennessee 37774, with all appurtenances, improvements, and attachments thereon and more particularly described as follows:

Situated in the First (1st) Civil District of Loudon County, Tennessee, and identified as Map 050, Parcel 019.00, and being more particularly described as follows:

Beginning at a stake, an iron pin, and corner with Grace McKelvey in the edge of the Davis Ferry Road, and running thence with the Davis Ferry Road eastwardly a distance of 162 feet to a stake and corner; thence leaving the road and running Southwardly and parallel with the Grace Receive line a distance of 225 feet to a stake; thence running Westwardly and parallel with the Davis Ferry Road a distance of 180 feet to a stake in the line of Grace McKelvey; thence with the line of Grace McKelvey Northwardly 220 feet, more or less, to the Point of Beginning.

For further reference see deed recorded on July 12, 2010 in Book D342, Page 121 in the Register of Deeds for Loudon County, Tennessee.

(b) $29,900.00 seized from BB&T Account xxxxxxxxx9066 belonging to Aurora Carvajal d/b/a Servicios Latinos Uno LLP on December 16, 2014;

(c) $241,600.00 seized from ORNL Federal Credit Union Safe Deposit Box No 810 belonging to Aurora Carvajal on 12/16/2014;

(d) $80,000.00 seized at 3360 Davis Ferry Rd., Loudon, Tennessee on December 16, 2014;

(e) $372.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(f) $1,000.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(g) $680.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(h) $600.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(i) $6,000.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(j) $16,000.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(k) $33,441.00 seized at 11624 Lanesborough Way, Apt. 801, Knoxville, Tennessee on December 16, 2014;

(l)     $574.00 seized at 11624 Lanesborough Way, Apt. 801, Knoxville, Tennessee on December 16, 2014;

(m)     $630.00 seized at 300 South Tulane Ave., Oak Ridge, Tennessee on December 16, 2014; and

(n)     $6,081.00 seized at 162 Woodmere Mall, Crossville, Tennessee on December 16, 2014.

(o)     A personal money judgment against the defendant and in favor of the United States of an amount not less than $10,800,000, representing the amount of proceeds obtained as a result of an offense in violation of 18 U.S.C. 1349.

3.     Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. § 1956, any defendant so convicted shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following property:

(a)     Real property located at 3360 Davis Ferry Road, Loudon, Tennessee 37774, with all appurtenances, improvements, and attachments thereon and more particularly described as follows:

Situated in the First (1st) Civil District of Loudon County, Tennessee, and identified as Map 050, Parcel 019.00, and being more particularly described as follows:

Beginning at a stake, an iron pin, and corner with Grace McKelvey in the edge of the Davis Ferry Road, and running thence with the Davis Ferry Road eastwardly a distance of 162 feet to a stake and

corner; thence leaving the road and running Southwardly and parallel with the Grace Receive line a distance of 225 feet to a stake; thence running Westwardly and parallel with the Davis Ferry Road a distance of 180 feet to a stake in the line of Grace McKelvey; thence with the line of Grace McKelvey Northwardly 220 feet, more or less, to the Point of Beginning.

For further reference see deed recorded on July 12, 2010 in Book D342, Page 121 in the Register of Deeds for Loudon County, Tennessee.

(b)     $29,900.00 seized from BB&T Account xxxxxxxxx9066 belonging to Aurora Carvajal d/b/a Servicios Latinos Uno LLP on December 16, 2014;

(c)     $241,600.00 seized from ORNL Federal Credit Union Safe Deposit Box No 810 belonging to Aurora Carvajal on 12/16/2014;

(d)     $80,000.00 seized at 3360 Davis Ferry Rd., Loudon, Tennessee on December 16, 2014;

(e)     $372.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(f)     $1,000.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(g)     $680.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(h)     $600.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(i) $6,000.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(j) $16,000.00 seized at 521 Hwy. 321, Suite 3, Lenoir City, Tennessee on December 16, 2014;

(k) $33,441.00 seized at 11624 Lanesborough Way, Apt. 801, Knoxville, Tennessee on December 16, 2014;

(l) $574.00 seized at 11624 Lanesborough Way, Apt. 801, Knoxville, Tennessee on December 16, 2014;

(m) $630.00 seized at 300 South Tulane Ave., Oak Ridge, Tennessee on December 16, 2014; and

(n) $6,081.00 seized at 162 Woodmere Mall, Crossville, Tennessee on December 16, 2014.

(o) A personal money judgment against the defendant and in favor of the United States of an amount not less than $10,800,000, representing property involved in an offense in violation of 18 U.S.C. § 1956.

4. If any of the property described above, as a result of any act or omission of a defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461.

A TRUE BILL:

**SIGNATURE REDACTED**

FOREPERSON

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

Frank M. Dale, Jr.
Assistant United States Attorney